IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PULTE HOME CORPORATION, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  08-311 |
| | : | |
| v. | : | |
| | : | |
| DELAWARE LAND ASSOCIATES, L.P., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

Giles, J.                                                                                          May 22, 2008

## I.   INTRODUCTION

Before the court is Defendants Delaware Land Associates, L.P. and Oriskany, Inc.'s

Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, Alternatively, to

Transfer this Case to the District of Maryland (Docket No. 3).  Defendants' Motion is brought

pursuant to Federal Rule of Civil Procedure 12(b)(2), and in the alternative, under Fed. R. Civ. P.

12(b)(3).  Plaintiff opposes Defendants' motion and argues that this court has personal

jurisdiction over Defendants and that the Eastern District of Pennsylvania is an appropriate venue

for this matter.

For the reasons that follow, Defendants' Motion is granted in part and denied in part.  The

court finds that, while it has personal jurisdiction over the defendants, venue is not appropriate in

the Eastern District of Pennsylvania.  As a result, it is necessary to transfer the matter to the

District of Maryland.

**II.      FACTUAL BACKGROUND**

A summary of the relevant facts as alleged in Plaintiff's Complaint and the exhibits

attached thereto follow.[1]  Plaintiff, a Michigan corporation, is engaged in the business of real

estate development and has a business address in Trevose, Pennsylvania.  Defendant Delaware

Land Associates, L.P. ("DLA") is a Delaware limited partnership with a business address in

Newark, Delaware.  Defendant Oriskany, Inc. ("Oriskany") is the general partner of DLA.

Plaintiff and DLA, by its general partner Oriskany, entered into an Agreement of Sale

("the Agreement") on November 13, 2003 in which Plaintiff agreed to purchase certain real

property from DLA.  This real property ("the Property") is located in Cecil County, Maryland.

The Property is comprised of 97.7 acres, which were to be subdivided into approximately

160 single-family residential buildings lots.  (Compl. Ex. A 1)("Agr. of Sale").  Under Article 14

of the Agreement, Plaintiff's obligation to purchase the property is contingent upon DLA's

acquisition of certain permits and approvals required in order to allow Plaintiff to construct

single family homes on at least one hundred and fifty lots.  (Agr. of Sale Sec. 14(a).)  Section

14(b)(i) of the Agreement requires Seller to "use its good faith, commercially reasonable efforts

to obtain the Approvals."  The Agreement provides a time frame for DLA to obtain such

approvals and permits.  (Agr. of Sale Art. 14.)  Further, the Agreement outlines additional

obligations of the parties, including a requirement that DLA submit certain materials, including

notices, requests and other communications under the Agreement, by mail to the Plaintiff's

Trevose, Pennsylvania address.  (Agr. of Sale Art. 20.)  The Agreement reflects the parties'

---

[1] Plaintiff is entitled to have factual disputes drawn in its favor and to have all of its
factual allegations taken as true.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.
2004) (citation omitted).

determination that the "[i]nitial closing of title for the first one-third (1/3) of the lots for which

approvals are obtained would take place upon a date specified by Pulte which was not more than

thirty (30) days after the Satisfaction Date, provided that all conditions set forth in this

Agreement have been satisfied."  (Compl. ¶ 8 (internal quotation omitted).)

Plaintiff alleges that DLA did not satisfy the conditions precedent for closing under the

Agreement, and subsequent written amendments thereto, and that as a result, Plaintiff terminated

the Agreement on September 29, 2006.  In a letter dated September 22, 2006, however, counsel

for DLA purported to terminate the Agreement on the basis that Plaintiff had defaulted under the

Agreement.  Plaintiff disputes DLA's claim that DLA terminated the Agreement and denies that

it defaulted under the Agreement.

In its Complaint, Plaintiff claims that Defendants breached the Agreement,

misrepresented key facts (including their progress toward obtaining the approvals and permits)

and violated the duties of good faith and fair dealing.


III.   **DISCUSSION**

A.   Personal Jurisdiction

Due process as guaranteed by the Fourteenth Amendment limits a court's exercise of

personal jurisdiction over a nonresident defendant to matters in which there exist "minimum

contacts" between the defendant and the forum state.  World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. 286, 291 (1980) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

(1945)).  A court's exercise of personal jurisdiction over a non-resident defendant requires that

there must be such a connection between the defendant and the forum state such that a defendant

might "reasonably expect to be haled into court there." World-Wide Volkswagen Corp., 444

U.S. at 297.

A federal court sitting in Pennsylvania has jurisdiction over parties to the extent provided

under Pennsylvania state law.  Fed. R. Civ. P. 4(e).  Pennsylvania's long-arm statute provides for

jurisdiction coextensive with the due process requirements of the United States Constitution.  42

Pa. Cons. Stat. § 5322(b); see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d

476, 481 (3d Cir. 1993).

Personal jurisdiction falls into two categories: general and specific.  General Electric Co.

v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  A defendant is subject to general jurisdiction if

"it has continuous and systematic contacts with the forum state." General Electric Co., 270 F.3d

at 150 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)).

Specific jurisdiction exists when "a non-resident defendant has 'purposefully directed' his

activities at a resident of the forum and the injury arises from or is related to those activities."

General Electric Co., 270 F.3d at 150 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,

472 (1985)).

Specific jurisdiction requires a determination as to whether a defendant has "certain

minimum contacts with [the forum state] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. at

316 (citations omitted).  Whether a defendant has "minimum contacts" with the forum state has

two parts.  First, the court must determine whether the defendant "purposefully directed [its]

activities at the forum." Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)

(quoting Burger King Corp., 471 U.S. at 472).  Second, the court must determine whether the

litigation "'arise[s] out of or relate[s] to' at least one of those activities. Id. (citing Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)). If the court concludes that minimum contacts have been established, it must finally "consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. (quoting Burger King, 571 U.S. at 476 (internal citations omitted)).

As Defendants have challenged personal jurisdiction, Plaintiff has the burden to establish that this court has personal jurisdiction over Defendants. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted). Plaintiff must establish a prima facie case of personal jurisdiction, and is entitled to have factual disputes drawn in its favor and all of its factual allegations taken as true. Id. (citations omitted).

The court will first address whether there is specific jurisdiction over Defendants.

> 1.  *Defendants purposefully availed themselves of conducting business in Pennsylvania.*

The first question the court must address is whether Defendants purposefully availed themselves of conducting business in Pennsylvania. A review of the facts demonstrates that Defendants had multiple contacts with Pennsylvania. The parties communicated during the negotiation and performance of the Agreement through correspondence including letters and electronic mail ("e-mail"). (Pl.'s Mem. of Law Opp. to Defs.' Mot. to Dismiss 7.) In the Agreement, Plaintiff is identified as having an address in Trevose, Pennsylvania, to which Defendants were required to send certain materials to Plaintiff. (Agr. of Sale 1, 13-14.) In addition, Peter O'Rourke, President of Oriskany, traveled to Plaintiff's office in Trevose, Pennsylvania once or twice in connection with this Agreement. (Defs.' Mot. To Dismiss, Ex.

O'Rourke Aff. ¶ 6.)  However, Defendants have never had an office in Pennsylvania or an employee located in Pennsylvania and they have never advertised in Pennsylvania.  (O'Rourke Aff. ¶ 3-4.)

The communications that Defendants had with Plaintiff in Pennsylvania by mail and e-mail are significant.  The Third Circuit has found that mail and telephone communications that the defendant sent into the forum state may be sufficient to be considered "minimum contacts." See Grand Entm't Group, Ltd., 998 F.2d at 482; see also Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990) (mail and telephone communications included as contacts creating a substantial connection with the forum state).  Further, the Third Circuit has found a defendant's contract negotiations with the residents of a forum state are sufficient minimum contacts for the exercise of personal jurisdiction.  Grand Entm't Group, Ltd., 998 F.2d at 482-83 (stating that "contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum"); see also Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 147-48 (3d Cir.), cert. denied, 113 S. Ct. 61 (1992) (finding that telephone calls and correspondence sent into the forum state by the defendant's representative, together with a meeting in the forum state with the purpose of facilitating the closing of a loan were sufficient minimum contacts).  The importance given to such contacts is based on the understanding that in "modern commercial arrangements . . . communication by electronic facilities, rather than physical presence, is the rule."  General Electric Co., 270 F.3d at 151.  Here, Defendants knowingly sent e-mails and letters to Plaintiff's representatives in Pennsylvania.

Defendants' presence in Pennsylvania on at least one occasion is also significant.  The Third Circuit has stated that "[a]ctual presence during pre-contractual negotiations, performance,

and resolution of pre-contractual difficulties is generally factored into the jurisdictional

determination." Id. at 151 (citations omitted); see also Carteret Savings Bank, FA, 954 F.2d at

147-48.  As Defendants have acknowledged, they came to Pennsylvania on one or two occasions

for matters relating to the Agreement.  Plaintiff alleges that Defendants' presence in

Pennsylvania was for the purpose of contract negotiations.

Finally, the nature of the Agreement and the relationship created between the parties

suggests that there were continuing obligations between Defendants and Plaintiff.  The Supreme

Court has stated that when a defendant has created "'continuing obligations' between himself and

residents of the forum, he manifestly has availed himself of the privilege of conducting business

there, and because his activities are shielded by the 'benefits and protections' of the forum's laws

it is presumptively not unreasonable to require him to submit to the burdens of litigation in that

forum as well." Burger King, 471 U.S. at 475-76 (quoting Travelers Health Ass'n. v. Virginia,

339 U.S. 643, 648 (1950)).  The Agreement required DLA to obtain certain approvals and

permits for the Property and to be in frequent communication with Plaintiff concerning the status

of such approvals and permits.  Such requirements established a series of continuing obligations

between the parties in anticipation of Plaintiff's purchase of the Property.

The court finds that Plaintiff has met its burden and established that Defendants

purposefully directed their activities to Pennsylvania and availed themselves of conducting

business within Pennsylvania.  Defendants engaged in negotiations with Plaintiff, located in

Pennsylvania, for the purpose of entering into an agreement of sale of real property, Defendants

met with Plaintiff's representative in Pennsylvania for the purpose of negotiating the Agreement,

and Defendants entered into a sales agreement with Plaintiff that expressly acknowledges

Plaintiff's Pennsylvania business address.  Defendants also sent correspondence by letter and e-mail to Plaintiff's representatives in Pennsylvania.  Finally, the Agreement clearly contemplates a continuing relationship between the parties that required, in part, Defendant to fulfill certain obligations to Plaintiff and send notices, requests and other documents regarding its actions to Plaintiff in Pennsylvania.  By making these contacts with Pennsylvania, Defendants intentionally reached out to the forum state to conduct business.

> 2.____*This case arises out of or is related to Defendants' activities within Pennsylvania.*

The second question in determining whether Defendants had minimum contacts with the forum state is whether Plaintiff's claims "arise out of or relate to" Defendants' contacts with Pennsylvania.  See Helicopteros, 455 U.S. at 414.  The Third Circuit has not adopted a bright-line test for this relatedness requirement, but has provided some guidance as to what meets this requirement.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 320 (3d Cir. 2007).  In contract cases, the Third Circuit has typically required "substantial relevance," O'Connor, 496 F.3d at 320, specifically, "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." General Electric Co., 270 F.3d at 150.  To further clarify the relatedness requirement, the Third Circuit has held that specific jurisdiction "requires a closer and more direct causal connection than that provided by the but-for test." O'Connor, 496 F.3d at 323.  The Third Circuit has also directed that in the "course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests." Id. (citing Burger King, 471 U.S. at 475-76).

The court concludes that Defendants' contacts with Pennsylvania were instrumental in the

formation of the contract and to the performance of Defendants' continuing obligations to the

Plaintiff under the contract as they made the negotiation and performance of the contract

possible.  Further, despite the fact that the Agreement contained a choice of law provision for the

application of Maryland law to disputes between the parties regarding the contract, Defendants'

contacts with Pennsylvania were of such a nature that Defendants necessarily availed themselves

of the benefits provided by Pennsylvania's laws and, reciprocally, became subject to the

obligations imposed by Pennsylvania's laws.  See O'Connor, 496 F.3d at 323 (citing Int'l Shoe,

326 U.S. at 319, for the proposition that "[w]ith each purposeful contact by an out-of-state

resident, the forum state's laws will extend certain benefits and impose certain obligations").

Here, Defendants availed themselves of Pennsylvania laws that allow individuals and businesses

to make and enforce binding agreements, even if the agreement that was eventually negotiated in

this case contains a choice of law provision invoking the laws of another state.  See O'Connor,

496 F.3d at 323.  While the presence of the Property in Pennsylvania certainly would have been a

factor in favor of finding that the relatedness requirement has been met, the presence of the

Property in Maryland does not diminish the significance of Defendants' other contacts with

Pennsylvania.

Having found that Defendants purposefully availed themselves of conducting business in

Pennsylvania, and that this case arises out of or is related to Defendants' activities within the

state, the court finds that Plaintiff has established that Defendants had "minimum contacts" with

Pennsylvania.  See Int'l Shoe, 326 U.S. at 316.

3.       *The court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.*

Having found that there are minimum contacts between Defendants and Pennsylvania, the court must determine whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co., 326 U.S. at 316. The court must focus on the relationship between Defendants and Pennsylvania to ascertain whether it is reasonable to require Defendants to defend the legal action brought in this court. World-Wide Volkswagen Corp., 444 U.S. at 292.

The Supreme Court has outlined several factors that a court may consider in its determination of the reasonableness of jurisdiction, including "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief . . . at least when that interest is not adequately protected by the plaintiff's power to choose the forum," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."  World-Wide Volkswagen Corp., 444 U.S. at 292 (internal quotations and citations omitted).  Ultimately, however, "[o]nce the plaintiff has made out a prima facie case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Grand Entm't Group, Ltd., 988 F.2d at 483 (internal quotations omitted).

The court has considered these factors and concludes that its exercise of personal jurisdiction over Defendants is reasonable and comports with traditional notions of fair play and substantial justice.  In reaching this conclusion, the court has evaluated the relationship between

the defendants and Pennsylvania as well as Defendants' failure to present a compelling case that

jurisdiction is unreasonable.  While Defendants argue, in support of their alternative argument

that venue belongs in the District of Maryland, not the Eastern District of Pennsylvania, that it

would be inconvenient for witnesses to travel to Pennsylvania from Maryland, the possible

inconvenience of the level that they describe does not present a compelling case rendering the

exercise of jurisdiction unreasonable.

Having concluded that the defendants had minimum contacts with Pennsylvania and that

the exercise of personal jurisdiction over Defendants comports with traditional notions of fair

play and substantial justice, the court finds that it has specific jurisdiction over Defendants in this

matter.  Having determined that there is specific jurisdiction over Defendants, the court will not

determine whether it has general jurisdiction.

B.      Venue

As an alternative to their argument that this court lacks personal jurisdiction, Defendants

argue that the Eastern District of Pennsylvania is an improper venue for this matter.

This matter was originally filed in the Court of Common Pleas in Delaware County,

Pennsylvania and was removed to the District Court of the Eastern District of Pennsylvania by

Defendants on January 17, 2008, pursuant to 28 U.S.C. § 1441.  This court's jurisdiction is based

on the diversity of citizenship of the parties.  Venue in such circumstances is controlled by 28

U.S.C. § 1391(a), which states, in relevant part, that:

> A civil action wherein jurisdiction is founded only on diversity of
> citizenship may, except as otherwise provided by law, be brought
> only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State,  (2) a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

It is clear that subsection (1) is not applicable to this matter, as not all of the defendants reside in Pennsylvania. Subsection (3) is not applicable, because, as the court finds below, this action could have been brought in another district, specifically, the District of Maryland. The only remaining grounds for venue are found in subsection (2): "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." As it is undisputed that the Property is located in Cecil County, Maryland, outside of the Eastern District of Pennsylvania, the question before the court is whether the Eastern District of Pennsylvania is a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."

Even though the court has found that Defendants had such contacts with Pennsylvania to warrant the exercise of personal jurisdiction, this is not sufficient to find that venue in this court is proper. The test for determining venue does not focus on "the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). The "events or omissions giving rise to the claim" revolve around DLA's obligation to obtain "all permits and approvals necessary" to permit Plaintiff to construct on not fewer than 150 lots. (Compl. ¶ 21.) It is Plaintiff's contention that Defendants did not obtain these approvals and permits within the time-frame provided by the Agreement, and that the Defendants did not use "good faith,

commercially reasonable efforts to obtain the Approvals," as required by Section 14(b)(i) of the

Agreement.  The requisite permits and approvals, as detailed in Article 14, include:

> subdivision and land development approval, sewer allocation and
> connection permits, planning modules of land development and all
> other required permits and approvals, wetlands and other
> environmental approvals and permits, electric service, direct public
> street access and all permits and approvals for same and for all
> utilities, and any required water service agreements, but expressly
> excluding building permits.  The subdivision plan for Property
> shall have been duly approved and recorded among the land
> records of the County.

(Agr. of Sale Sec. 14(a).)  While a harm allegedly occurred in Pennsylvania by virtue of

Defendant's alleged breach, the basis of the alleged breach is that Defendant failed to obtain

required permits and approvals in Maryland, where the Property is located.  The partial

negotiation of the contract in Pennsylvania, as well as Defendants' correspondence with Plaintiff

regarding the status of permits and approvals does not comprise a "substantial" part of the events

giving rise to the claim in this case.  The court concludes that a substantial part of the events or

omissions giving rise to the claim did not occur in the Eastern District of Pennsylvania and that

consequently, venue in this district is improper.

Having found that this district is an improper venue for the matter, the court must decide,

under 18 U.S.C. § 1406, titled "Cure or waiver of defects," whether to dismiss the action or

transfer it to another district.[2]  Section 1406(a) provides that

> The district court of a district in which is filed a case laying venue
> in the wrong division or district shall dismiss, or if it be in the
> interest of justice, transfer such case to any district or division in
> which it could have been brought.

---

[2] Section 1406, rather than 28 U.S.C. § 1404, is applicable to the question of transfer in
this matter because the court has concluded that venue in this district is improper.

The court finds that it is in the interest of justice for this case to be transferred to the District of Maryland rather than dismissed. First, this is a matter that could have been brought in the District of Maryland. Defendants agree that the District of Maryland would have personal jurisdiction over them, and this court concludes that a district court in the District of Maryland would find that Defendants have such minimum contacts with Maryland that the exercise of personal jurisdiction by the district court of the District of Maryland would not offend traditional notions of fair play and substantial justice. The court also finds that a district court in the District of Maryland would find that it is an appropriate venue for the matter because the subject property at issue in this matter is located within the boundaries of the District of Maryland. See 28 U.S.C. § 1391(a)(2). The transfer of the case to the District of Maryland will facilitate "an expeditious and orderly adjudication" of the matter. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). Dismissal of the action could lead to unnecessary delays and has the potential to penalize Plaintiff with respect to any applicable statute of limitations. It is clear from the language of the statute that Congress intended to confer upon district courts broad discretion in determining whether to transfer actions or dismiss due to improper jurisdiction. Id. at 466-67. The court concludes that a transfer of this case to the District of Maryland is in the interest of justice.

## IV.   CONCLUSION

For the foregoing reasons, this court concludes that it has personal jurisdiction over Defendants in this matter, but that venue is inappropriate in the Eastern District of Pennsylvania and transfer of the matter to the District of Maryland is appropriate. As a result, Defendant's Motion to Dismiss is granted in part and denied in part. An appropriate order follows.